UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUZANNE STILL<br>264 Blossom Road<br>Barnwell, SC 29812<br><br>   Petitioner,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF LABOR<br>200 Constitution Ave., N.W.<br>Washington, D.C. 20210<br><br>and<br><br>NATIONAL INSTITUTE OF OCCUPATIONAL<br>SAFETY AND HEALTH<br>Patriots Plaza 1<br>395 E Street, SW, Suite 9200<br>Washington, DC 20201<br><br>   Respondents. | Index No. _____<br><br>**PETITION** |

**PETITION TO SET ASIDE OR MODIFY FINAL
DECISION AND DENIAL OF REQUEST
FOR RECONSIDERATION OF THE DEPARTMENT OF LABOR
DIVISION OF ENERGY EMPLOYEE
OCCUPATIONAL ILLNESS COMPENSATION**

  1. Mrs. Suzanne Still, (hereinafter "Mrs. Still" or "the Claimant") by her attorney R. Hugh Stephens, asks this Court to review, modify and or set aside a Final Decision in her Energy Employees Occupational Illness Compensation Program Act (EEOICPA or the Act) claim (42 U.S.C. § 7384 *et seq.*) dated December 27, 2016 (attached as exhibit 1), and the denial of her request that that decision be reconsidered dated May 18, 2017 (attached as exhibit 2).

  2. Mrs. Still's husband, Mr. Leroy Still, worked at a Department of Energy (DOE) facility engaged in the production of nuclear weapons, The Savannah River Site, for almost 26

years from January 1, 1974 until November 1, 1999. During that time he was exposed to radiation while working in the vicinity of nuclear reactors. During his life he was diagnosed with four skin cancers, a blood cancer (Polycythemia Rubra Vera) and a brain cancer (Glioblastoma).

3. Mr. Still died of brain cancer on September 29, 2014.

## EEOICPA

4. The EEOICPA is a federal program that compensates energy employees or nuclear weapons workers who are exposed to ionizing radiation and other hazardous substances at Department of Energy (DOE) nuclear weapons manufacturing facilities when those workers become ill and the illness is related to occupational exposure to hazardous substances including ionizing radiation.

## Jurisdiction

5. This Court has jurisdiction over this matter by virtue of the Administrative Procedure Act 5 U.S.C. § 701 *et seq*. ("APA"), the EEOICPA 42 U.S.C. § 7385s-6 ("A person adversely affected or aggrieved by a final decision of the Secretary under this part may review that order in the United States district court in the . . . District of Columbia") and because this matter raises a federal question under 28 U.S.C. § 1331.

6. Mrs. Suzanne Still lives at 264 Blossom Road Barnwell, SC 29812.

7. The Savannah River Site is located in Aiken, South Carolina.

8. The EEOICPA program addresses two claims under two parts of the statute known as Part B and Part E.

## Part B

9. Part B primarily addresses cancer caused by occupational exposure to radiation at Department of Energy (DOE) facilities engaged in the production of nuclear weapons.

10. Part E addresses any illness or condition caused by occupational exposure to any hazardous substance including radiation.

11. Compensation under Part B for cancer caused by radiation is limited to $150,000 plus healthcare related to the accepted cancer.

## Part E

12. Compensation under Part E is limited to $250,000 and includes lump sum compensation for whole person impairment, wage loss, healthcare related to the accepted condition and survivor's benefits.

13. A claim made by a worker at a DOE facility that is accepted under Part B is automatically accepted under Part E.

14. A claim can be accepted under Part E alone.

## Mrs. Still's Claim

15. Mrs. Still filed claims under both Part B and Part E based on Mr. Still's Glioblastoma, Polycythemia Rubra Vera, and four skin cancers. Her claim is based in part on the likelihood that his cancers were caused by his exposure to ionizing radiation at the Savannah River Site in Aiken, South Carolina, a DOE designated facility, from 1974 through 1999.

16. Mrs. Still's claim, if accepted by the Department of Labor's (DOL) Department of Energy Employees Occupational Illness Compensation (DEEOIC), would entitle her to compensation of $150,000 related to Mr. Still's six primary cancers caused by radiation exposure under Part B and as a surviving spouse $125,000 under Part E for a total of $275,000 for the loss of her husband due to cancer caused by occupational exposure to radiation at a DOE nuclear weapons manufacturing facility.

17. Mrs. Still's claims under EEOICPA Part B and Part E were denied in a Final Decision dated December 27, 2016 (attached as exhibit 1) and her request for reconsideration was denied on May 18, 2017 (attached as exhibit 2).

### Dose Reconstruction

18. The basis for the request that this final decision be modified or set aside involves the failure of the National Institute of Occupational Safety and Health (NIOSH) to comply with its dose reconstruction methodology in its preparation of the Dose Reconstruction Report which resulted in a denial of the claim under Part B and Part E of the Act and the failure to acknowledge that Mr. Still's exposure to radiation contributed to his cancer for purposes of Part E.

19. The dose reconstruction process involves the estimation of radiation exposure to an employee through the use of radiation measuring devices such as dosimeter badges worn on the outside of the body which measure external radiation and bioassays and whole body counts which measure internal radiation or radioactive particles that have been inhaled or ingested by the energy employee.

20. These estimates of radiation are measured in REM and the annual estimates are used to calculate a Probability of Causation (PoC) based on a statistical model that was developed based on medical data collected at Hiroshima and Nagasaki after nuclear weapons were detonated in those cities.

21. Under Part B if the Dose Reconstruction results in a Probability of Causation (PoC) of 50% or greater, the claim is accepted as it is deemed at least as likely as not that occupational exposure to radiation caused the worker's cancer.

22. Under Part B of the EEOICPA, NIOSH, or its contractor, is required to perform

the dose reconstruction based on methods described in certain peer reviewed documents. Examples of these documents include the External Dose Reconstruction Implementation Guideline and the Internal Dose Reconstruction Implementation Guideline. These documents are referenced with citations at the end of the NIOSH Dose Reconstruction Report.

23. These documents contain the NIOSH Dose Reconstruction methodology and are made available on the internet.

**Mrs. Still's objections to NIOSH's Application of Its Dose Reconstruction Methodology**

24. Mrs. Still raised a number of objections to NIOSH's failure to properly follow applicable NIOSH Dose Reconstruction methodology.

25. While our objections to the Dose Reconstruction are rather technical a brief background should provide sufficient notice of the basis for this petition.

26. Mr. Still worked at the Savannah River Site in Aiken, Georgia as a truck driver working near and around nuclear reactors for almost 26 years.

27. During those 26 years he was monitored at various points for both internal and external radiation doses.

28. The following chart shows annual deep and shallow external radiation dose measured by a Translucent Dosimeter (TLD) as well as a single measurement of Tritium 1990.

| Year  | TLD | Deep | Shallow | TLND | TRIT |
|-------|-----|------|---------|------|------|
| 1974* |     | 0    | 10      |      |      |
| 1975  |     |      |         |      |      |
| 1976  |     | 15   | 25      |      |      |
| 1977  |     | 10   | 45      |      |      |
| 1978  |     | 20   | 25      |      |      |

| Year | | | | | |
|---|---|---|---|---|---|
| 1979 | | | | | |
| 1980* | | 30 | 35 | | |
| 1981* | | | | | |
| 1982 | | | | | |
| 1983 | | 0 | 55 | | |
| 1984 | | | | | |
| 1985* | | 5 | 5 | | |
| 1986 | | 35 | 65 | | |
| 1987 | | 100 | 205 | | |
| 1988* | | 50 | 150 | | |
| 1989 | | 0 | 100 | | |
| 1990* | | 0 | 0 | | 0 |
| 1991* | | 0 | 0 | | |
| 1992* | | 15 | 15 | | |
| 1993* | | 0 | 0 | | |
| 1994* | | 0 | 0 | | |
| 1995* | | 6 | 6 | | |
| 1996* | | 0 | 0 | | |
| 1997* | | 0 | 0 | | |
| 1998* | | 0 | 0 | | |
| 1999* | | 0 | 0 | | |
| Total | | 286 | 741 | | 0 |

*Years in which internal dose was measured (see exhibit 5 for complete radiation monitoring data).

See Employee HPAREH exposure by year (millirems) (attached hereto as exhibit 3).

29. These deep and shallow doses show some relatively significant external exposures and one test for a tritium dose.

6

30. The external exposures provide an indication of the potential for internal exposure but the limited internal dose monitoring did not uncover internal dose.

31. The following is a list of bioassays that test for internal exposures:

| Date | Element | Result | Location |
|---|---|---|---|
| 5.21.74 | Pu | < 0.1 | CS |
| 5.21.74 | FP | < 1 | CS |
| 8.25.80 | FP | < 1 | C |
| 10.1.81 | FP | < 1 | C |
| 10.1.81 | Pu | < .06 | C |
| 1.9.85 | FP | < .1 | C |
| 8.9.88 | Pu | < .1 | CS |
| 8.9.88 | Pu | < .05 | CS |

See spreadsheet for Mr. Still (17-40355)(attached hereto as exhibit 4).

32. While this monitoring for external and internal dose gave rise to external dose but to no internal dose, the dose reconstruction process addresses what is described as missed dose or the dose that might have been received but not measured because of the limit of detection of the dosimeter badges used to monitor external dose or the limitations of the internal dose monitoring program. See Radiation Exposure Records (attached as exhibit 5).

**Neutron Dose**

33. Consistent with the method of assigning external and internal dose, Mrs. Still has argued that Mr. Still should have been assigned missed neutron dose based on the document that addresses the assignment of that dose, "Neutron Exposures at the Savannah River Site." Office of Compensation Analysis and Support Technical Information Bulletin (OCAS-TIB-007)

(effective date 10/15/2007) (attached hereto as exhibit 6).

34.     Neutron exposures were addressed in a letter from counsel for Mrs. Still to the Final Adjudication Branch (FAB) dated June 11, 2015 providing additional evidence and argument in support of Mrs. Still's objection to the recommended decision dated February 5, 2015 and supplementing the record created during the hearing held on May 12, 2015. See letter from R. Hugh Stephens to Krystyna Frolich, Hearing Representative, DOL DEEOIC dated June 11, 2015 (attached hereto as exhibit 7).

35.     In that letter Mrs. Still identifies an applicable Technical Information Bulletin (TIB) (Document Number OCAS-TIB-007 effective date 10/15/2007) which explains:

> Starting with the use of the [Thermoluminescent Neutron Dosimeter] TLND in 1971, routine workers with significant potential for neutron exposure were adequately monitored with the TLND….There are some workers who depending on their job classification might have been intermittently exposed to low-level neutrons. The general criteria for neutron monitoring in the 1970s through the late 1980s were determined based on being exposed to a neutron field greater than or equal to 1mrem/hr. As a result, non-routine workers might or might not have been adequately monitored for neutron exposure depending on where in the facility they were conducting their work.

Neutron Exposures at the Savannah River Site, OCAS-TIB-007 (effective date 10/15/2007) at 1 of 6 (attached hereto as exhibit 6).

36.     The letter dated June 11, 2015 describes three criteria used to determine whether non-routine workers like Mr. Still should have been monitored for neutrons and therefore should receive annual neutron doses in the dose reconstruction.

37.     These criteria are: (1) work location, (2) work location giving rise to intermittent exposure to neutrons and (3) positive photon exposure.

38.     The June 11, 2015 letter addresses why each of the criteria is met and concludes

that neutron exposure should have been assigned in the dose reconstruction.

39. In response, the Final Decision explains:

> While the [Final Adjudication Branch] FAB acknowledges that the dose reconstruction may be difficult to understand, the methodology used by NIOSH that is explained in the dose reconstruction report is binding on the FAB CFR § 30.318.
>
> Since the second, third, and fourth objections pertain to the application of NIOSH methodology, the FAB forwarded your file to a Department of Labor Health Physicist (HP) for review. In response to the second objection, the HP noted that a non-production worker like Mr. Still would likely only have been in the H area and B line vicinity occasionally and would not have worked closely with plutonium sources in a glovebox. Accordingly the HP stated that the employee would have an extremely low probability of having any detectible neutron dose.
>
> In response to the third objection the HP stated that although Mr. Stephens opined that the employee's positive photon exposure is an indication that he should have been assigned a neutron dose, the employee's recorded external photon dose during his career was nearly zero. The HP pointed out that the employee's most positive doses were at the minimum level of detection (LOD), which is indicative of a very low level of recorded and potential dose. While Mr. Stephens estimated that NIOSH should have assigned the employee 13 mrem of neutron dose, the HP noted that that amount of dose is too small to have any impact on the employee's PoC [Probability of Causation]

See Final Decision and Remand Order dated August 10, 2015 (attached hereto as exhibit 5) at page 4 of 7.

40. The responses of the Department of Labor Health Physicist (DOL HP) do not represent an application of the NIOSH Dose Reconstruction methodology but a rejection of that methodology.

41. The DOL HP states that Mr. Still was a "non production worker" and "would not have worked closely with plutonium sources." These are the "non-routine workers" addressed in the Technical Information Bulletin (TIB). These workers were not monitored by a Thermoluminescent Neutron Dosimeter (TLND) but should have been and therefore neutron

9

dose should have been assigned in Mr. Still's dose reconstruction.

42. On the second of the criteria described in the TIB, positive photon doses, the DOL HP rejects the criterion of the TIB, "detectible photon doses", in favor of his or her own criterion requiring large detectible photon doses.

43. The Final Decision dated August 10, 2015 states:

> [T]he HP stated that although Mr. Stephens opined that the employee's positive photon exposure is an indication that he should have been assigned a neutron dose, the employee's recorded external photon dose during his career was nearly zero. The HP pointed out that the employee's most positive doses were at the minimum level of detection (LOD), which is indicative of a very low level of recorded and potential dose.

See Final Decision and Remand Order dated August 15, 2015 (attached hereto as exhibit 8).

44. Mr. Still's recorded external dose was far from zero. See exhibit 3 (deep dose 286, shallow dose 741).

45. A review of exhibit 3, which contains Mr. Still's external dose, suggests that these statements are simply not true.

46. On page two of exhibit 3 the lowest detectible exposures are 5 millirems.

47. Mr. Still's dose exceeds 5 millirems 15 times for deep dose with a high reading of 25 millirems in 1988 and 35 times for shallow dose with a high of 55 in 1983. Mr. Still's total shallow dose in 1987, 1988, and 1989 was 205, 150, and 100 millirems respectively. These are not negligible doses.

48. The DOL HP references the June 11, 2015 letter's identification of a specific neutron dose that should have been assigned indicating that that dose would have no impact on the probability of causation (POC) for Mr. Still. While the June 11, 2015 letter proposes one

assigned neutron dose for 1985-86, that is just one example of an assigned dose. Mrs. Still believes that numerous additional Neutron doses should have been assigned throughout Mr. Still's tenure at the Savannah River Site. The dose referenced by the DOL HP is an example of how Mrs. Still proposed that the NIOSH error be connected not the total she proposed be added to the dose reconstruction. A properly assigned neutron dose would have a significant impact on Mr. Still's probability of causation.

49. These *ipse dixit*, "trust me," statements from the DOL HP are evidence of the *ultra vives* conduct of NIOSH and the DOL HP both of whom have failed to follow the NIOSH methodology in a manner that appears arbitrary and capricious.

50. A Final Decision and Remand Order dated August 10, 2015 denied Mrs. Still's claim for Mr. Still's brain cancer. See Final Decision and Remand Order dated August 10, 2015 (attached hereto as exhibit 8).

51. In a letter dated September 3, 2015 Mrs. Still requested reconsideration based on the improper assignment of dose from fission products. See letter from R. Hugh Stephens to the DEEOIC dated September 3, 2015 (attached hereto as exhibit 9).

52. Reconsideration was granted in an Order dated October 23, 2015. See Order Granting Request for Reconsideration dated October 23, 2015 ("In your request for reconsideration, your AR noted another technical objection to the NIOSH dose reconstruction involving the application of the method for assigning fission products internal dose for unmonitored employees. On October 20, 2015, in response to a request from the FAB, the HP noted that your claim should be returned to the District Office to address the technical objection.")(attached hereto as exhibit 10).

53. In a recommended decision dated February 2, 2016 the District Office claims examiner explained:

> NIOSH provided the following response to your reconsideration request: "Internal monitoring results for urinalysis analyzed for fission products were available for 1974, 1980, 1981, and 1985 with routine whole body counts starting in 1990 through 1999, except for 1994. All internal monitoring results were less than the limit of detection. To ensure the internal dose from fission products were not underestimated the potential exposure period was extended to include a full year of fission product exposure for the year prior to each bioassay sample. Internal dose from fission products was not assigned for 1975-1978, 1981-1983, and 1985-1988 and after January of 1999 as there was no indication of fission product exposure.
>
> To determine what the impact of adding this internal dose could have made, we added the fission product doses based on the upper bound values identified in Table 4.4.2-7 for the years the [Energy Employee] EE has positive shallow doses. This resulted in PoC increasing from 31.39% to 33.94%."

See Notice of Recommended Decision dated February 2, 2016 at page 3 of 4 (attached hereto as exhibit 11).

54. On May 26, 2016 Mrs. Still through her attorney and authorized representative R. Hugh Stephens wrote to the Department of Labor describing objections to the Dose Reconstruction in Mrs. Still's claim. See May 26, 2016 letter from R. Hugh Stephens to the Department of Labor (attached hereto as exhibit 12).

55. This letter describes an objection to the assignment of dose from fission products. This objection if sustained would lead to an assignment of a significant dose of tritium throughout the years of Mr. Still's employment.

56. This letter also describes an error in the Dose Reconstruction that resulted in an underestimate of radiation dose based on a mischaracterization of the Cobalt-60 as absorption class M instead of absorption class S. The Cobalt-60 referenced in Table 4.4.2-7 references

Cobalt-60 "S" not Cobalt-60 "M". See exhibit 13.

57. While the National Institute for Occupational Safety and Health (NIOSH) reworked Mr. Still's dose in response to Mrs. Still's objections to the way that the dose reconstruction was performed, it assigned dose only from fission products that are cleared from the body quickly not those that remain in the body for a long period of time.

58. The proper assignment of fission product dose for Mr. Still requires an assignment of that dose for all years of employment not just those years in which he was monitored for internal dose.

59. Mrs. Still also contends that Mr. Still should have been assigned missed tritium dose for all of his years of employment because tritium dominates the fission products present at the Savannah River Site.

60. These objections are based not on differences of opinion relative to the proper exercise of discretion by NIOSH Health Physicists, but on a fair reading of the requirements of NIOSH methodology as set forth in NIOSH dose reconstruction guidance documents.

61. Mrs. Still believes that the most recent NIOSH Dose Reconstruction underestimated the doses of radiation to which Mr. Still was exposed by failing to reconstruct Mr. Still's dose consistent with NIOSH's dose reconstruction methodology.

62. Counsel for Mrs. Still requested a copy of her most recent dose reconstruction on November 17, 2016 and June 19, 2017. We expect to receive a copy in the near future. See Letters dated November 17, 2016 and June 19, 2017 (attached hereto as exhibit 14).

63. Mrs. Still also objects to the DOL DEEOIC's practice of denying that radiation

contributed to a worker's cancer under Part E based on the determination that radiation did not cause the worker's cancer for purposes of Part B.

64. Mrs. Still believes that her claim should be accepted under Part E as it is at least as likely as not that radiation contributed to Mr. Still's cancer.

65. Our objections to the determination related to the Part B and Part E claim relate (1) to the failure of NIOSH to properly apply its own Dose Reconstruction methodology to the facts of this claim, (2) to the failure of the DOL to properly describe how that method was applied in the Dose Reconstruction, (3) to the failure of the DOL to properly characterize Mrs. Still's objections to the NIOSH Dose Reconstruction as proper objections to the application of the NIOSH Dose Reconstruction methodology and not as improper challenges to the NIOSH methodology itself, (4) to the practice of DOL characterizing NIOSH's finding that radiation did not cause a worker's cancer as a finding that radiation did not contribute to that worker's cancer.

**Conclusion**

WHEREFORE, Suzanne Still requests that the orders of the DOL Division of Energy Employees Occupational Illness Compensation, in the above referenced federal workers compensation, EEOICPA, claim dated December 27, 2016 and May 18, 2017 denying Mrs. Still's claims under Part B and Part E be set aside and reversed such that Mrs. Still's claims can be accepted.

DATED:   Washington, D.C.
         July 17, 2017

                            LAW OFFICES OF NAT POLITO, PC

                            By ____/s/ Nat N. Polito_____
                                  Nat N. Polito

                            Attorneys for Plaintiff Suzanne Still
                            1776 K Street, NW

Washington, DC 20006
(202) 463-0110


STEPHENS & STEPHENS, LLP

By ___/s/ R. Hugh Stephens_____
         R. Hugh Stephens


Attorneys for Plaintiff Suzanne Still
Tri-Main Center
2495 Main Street
Suite 442
Buffalo, New York 14214
(716) 852-7590