# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

SUZANNE STILL,

    *Petitioner*,

v.

UNITED STATES DEPARTMENT OF LABOR,

    *Respondent.*

No. 17-cv-1420 (DLF)

## MEMORANDUM OPINION AND ORDER

Petitioner Suzanne Still brings this lawsuit against respondent Department of Labor ("DOL"), challenging DOL's final decision denying her compensation for her husband's death under the Energy Employees Occupational Illness Compensation Program Act, 42 U.S.C. § 7384 *et seq*. (the "EEOICPA"). *See* Dkt. 18 (Am. Pet.). Still argues that the dose reconstruction prepared by the National Institute of Occupational Safety and Health ("NIOSH"), upon which DOL's decision relied, failed to comply with the methodology required by NIOSH's own guidance documents. *See, e.g.*, Am. Pet. ¶ 22. Accordingly, Still contends that DOL's decision violates the APA and asks the Court to "set aside, vacate, modify, or reverse" that decision. *Id.* at 28; *see* 5 U.S.C. § 706(2)(A) (reviewing courts shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"). Before the Court is DOL's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that Still lacks standing. *See* Dkt. 20 (Mot. to Dismiss).

## I. BACKGROUND

### A. Statutory and Regulatory Background

Congress passed the EEOICPA in 2000 to ensure that former Department of Energy ("DOE") workers who "performed duties uniquely related to the nuclear weapons production and testing programs" receive "efficient, uniform, and adequate compensation for . . . radiation-related health conditions." 42 U.S.C. § 7384(a)(8). Under Part B of the EEOICPA, covered employees or their eligible survivors can receive up to $150,000 of compensation for certain covered illnesses caused by exposure to radiation at DOE facilities. *See* 42 U.S.C. §§ 7384l–7384w-1.

An individual seeking compensation and benefits under EEOICPA must file a claim with the DOL's Office of Workers' Compensation Programs ("OWCP"). *See* Exec. Order No. 13,179, 65 Fed. Reg. 77,487 (December 7, 2000); 20 C.F.R. § 30.1. To establish eligibility for compensation under Part B, the employee or survivor must show (1) that the employee was diagnosed with cancer; (2) that he was a DOE employee or contractor who was diagnosed with cancer after employment at a covered facility; and (3) that the cancer was "at least as likely as not" related to his employment at the covered facility. 20 C.F.R. § 30.210.

To determine whether it is "at least as likely as not" that a DOE employee's illness was related to his employment at a DOE facility, OWCP transfers relevant information about the employee to NIOSH to perform a "dose reconstruction." *See* 20 C.F.R. § 30.115. Dose reconstructions are "reasonable estimates of the radiation doses received by individuals . . . for whom there are inadequate records of radiation exposure." Exec. Order No. 13,179, 65 Fed. Reg. at 77,488. Based on the dose reconstruction report it receives from NIOSH, "together with information on the cancer diagnosis and other personal information provided to DOL by the

claimant," OWCP calculates the approximate likelihood that exposure to radiation at a DOE facility caused the employee's cancer. 42 C.F.R. § 82.4. In determining the probability of causation, OWCP is statutorily required to use the dose reconstruction provided by NIOSH. *See* 42 U.S.C. § 7384n; 42 C.F.R. § 81.6. If the probability of causation is equal to or greater than fifty percent, it is "at least as likely as not" that exposure to radiation at a DOE facility caused the cancer, and therefore the claimant is eligible for compensation. 20 C.F.R. § 30.213.

After determining whether the causation threshold is met, OWCP issues a recommended decision regarding the claimant's compensation claim. 20 C.F.R. § 30.300. A claimant may challenge the recommended decision within sixty days by filing an objection with OWCP's Final Adjudication Branch ("FAB"). *Id*. § 30.310. FAB then issues a "final decision," but the claimant may request reconsideration within thirty days and the Director of the Division of Energy Employees Occupational Illness Compensation ("DEEOIC") can reopen the claim as a matter of discretion. *Id.* §§ 30.316, 30.319, 30.320.

### B. Still's EEOICPA Claim

Still's husband was employed from January 1, 1974 until November 1, 1999 at a DOE facility engaged in the production of nuclear weapons. Am. Pet. ¶ 2. During his life, he was diagnosed with four skin cancers, a blood cancer, and a brain cancer; he died of the latter on September 29, 2014. *Id.* ¶¶ 2, 3.

Still filed her initial compensation claim with OWCP on October 10, 2014. *Id.* Ex. 2 at 1. OWCP referred the claim to NIOSH, which issued a dose reconstruction report on December 10, 2014. *See id.* Based in part on this first report, OWCP denied Still's claims in a final decision dated December 27, 2016 and denied her request for reconsideration on May 18, 2017. *Id.* On November 22, 2017, however, the Director of DEEOIC vacated OWCP's December 27, 2016

3

final decision and its May 18, 2017 denial of reconsideration. *Id.* According to OWCP, the Director vacated the decisions so that OWCP "could conduct further development of [Still's] survivor claim, including another referral to [NIOSH] for a rework of the prior December 10, 2014 dose reconstruction," and to address each of the technical objections that Still had previously raised in relation to that dose reconstruction. *Id.* at 1–2.

NIOSH then compiled a draft of its reworked dose reconstruction report, which responded to Still's thirteen technical objections to the original dose reconstruction report, and ultimately concluded that there was only a 33.72% chance that radiation exposure at a DOE facility had caused her husband's cancer. *Id.* at 5. NIOSH sent Still a draft of its reworked dose reconstruction and offered her the opportunity to raise any objections to the draft report. *Id.* at 2. Still declined to do so, and signed NIOSH's Form OCAS-1, certifying that she did not have any further information to provide to NIOSH for its use in completing the dose reconstruction. *Id.*

Based on the reworked dose reconstruction, OWCP concluded that it was not "at least as likely as not" that Still's husband's cancer was caused by radiation exposure at his workplace; accordingly, on September 10, 2018, OWCP issued a recommended decision denying Still's Part B claim. *Id.* at 5. Still did not submit objections to this recommended decision. *Id.* at 6. On November 19, 2018, FAB issued a final decision denying her Part B claim. *Id.* at 1.

Still then submitted a request for reconsideration of the November 19, 2018 final decision, along with her objections to that decision. *Id.* Ex. 3 at 1. In assessing whether to grant Still's request for reconsideration, FAB consulted a health physicist within the DEEOIC who reviewed Still's objections to the November 19 decision. *Id.* at 2. The health physicist concluded that NIOSH had followed standard dose reconstruction procedures in assessing Still's

claim, *id.* at 4, and FAB accordingly concluded that there was no basis to reconsider the decision, *id.* at 5. FAB denied Still's request for reconsideration on March 5, 2019. *Id.* at 1.

### C. Procedural History

On July 17, 2017, Still filed her original petition in this Court, listing both DOL and NIOSH as respondents and primarily challenging NIOSH's 2014 dose reconstruction. *See* Dkt. 1 (Pet.). On December 29, 2017, the parties filed a joint motion to stay the proceedings while DOL completed its re-adjudication of Still's claims and a joint stipulation dismissing NIOSH from the case. *See* Dkt. 13 (Joint Mot. to Stay). The Court granted the motion to stay and dismissed NIOSH without prejudice. Min. Order of Dec. 30, 2017. On April 4, 2019, the Court lifted the stay at the parties' request. Min. Order of Apr. 4, 2019.

Still filed her amended petition on June 27, 2019, asking the Court to "set aside, vacate, modify, or reverse" DOL's November 19, 2018 decision, Am. Pet. at 28, on the ground that NIOSH had failed to properly calculate her husband's dose reconstruction, *id.* ¶ 22. Specifically, Still contends that NIOSH's own guidelines required it to include doses of neutrons, tritium, and strontium in her husband's dose reconstruction. *E.g.*, *id.* ¶¶ 63, 102, 106. On July 25, 2019, DOL filed its motion to dismiss, arguing that Still lacks standing because any injury caused by NIOSH's allegedly erroneous dose reconstruction would not be redressable by a Court order against DOL, the only agency remaining in the case. Mot. to Dismiss at 10–13.

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss a claim over which the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "When ruling on a Rule 12(b)(1) motion, the court must treat the plaintiff's factual allegations as true and afford the plaintiff the benefit of

5

all inferences that can be derived from the facts alleged." *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks and citation omitted). "Because Rule 12(b)(1) concerns a court's ability to hear a particular claim, the court must scrutinize the plaintiff's allegations more closely when considering a motion to dismiss pursuant to Rule 12(b)(1) than it would under a motion to dismiss pursuant to Rule 12(b)(6)." *Schmidt v. U.S. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011). If the court determines that it lacks jurisdiction, the court must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

### III. ANALYSIS

The standing requirement imposed by Article III of the Constitution "contains three elements": (1) the plaintiff must have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) there must exist "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). "The burden of establishing these elements falls on the party invoking federal jurisdiction, and at the pleading stage, a plaintiff must allege facts demonstrating each element." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016). The plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

At issue in this case is the third standing requirement: redressability. "Redressability examines whether the relief sought, assuming that the court chooses to grant it, will likely alleviate the particularized injury alleged by the plaintiff." *Fla. Audobon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996). Still's challenge to DOL's final decision denying her

EEOICPA claim is directed at the dose reconstruction prepared by NIOSH, upon which DOL relied in reaching that decision. Still contends that NIOSH failed to adhere to its dose reconstruction methodology guidelines when it prepared her husband's dose reconstruction and that DOL, and its health physicist in particular, "blindly adopt[ed]" NIOSH's "facially flawed" dose reconstruction report. Am. Pet. § 22; Dkt. 22 (Opp'n to Mot. to Dismiss) at 10. In her amended petition, Still requests that the Court "set aside, vacate, modify, or reverse" DOL's decision and "order [DOL] to obtain a proper Dose Reconstruction from NIOSH on which to base a just determination on [her] EEOICPA claim." Am. Pet. at 28.

Still's requested relief is unlikely to redress her particularized injury. That is because her alleged injury stems from an erroneous dose reconstruction calculated by NIOSH. But NIOSH is no longer a party to this lawsuit. And DOL, the only remaining agency respondent, is legally required to accept the dose reconstruction as NIOSH calculates it. *See* 42 C.F.R. § 81.6 ("Determining probability of causation will require the use of radiation dose information provided to DOL by the National Institute for Occupational Safety and Health (NIOSH) . . . ."). DOL has no authority to compel NIOSH to change its dose reconstruction. Indeed, if the Court were to order the relief that Still seeks—either by simply setting aside DOL's final decision or by going further and ordering DOL to "obtain a proper Dose Reconstruction from NIOSH," Am. Pet. at 28—the most that DOL could do to effectuate the Court's order is "return the case to the district office for referral to NIOSH for such further action as may be appropriate," 20 C.F.R. § 30.318(a). But a referral from DOL would not likely redress an injury that ultimately derives from a dose reconstruction calculated independently by NIOSH, and over which NIOSH retains sole authority.

In resisting this conclusion, Still argues that NIOSH "is not immune to criticism or

7

correction, but is likely to attempt in good faith to respond to that criticism especially if that criticism comes from a federal court." Opp'n to Mot. to Dismiss at 2. But to meet the redressability requirement, Still must show that it is "likely, as opposed to merely speculative," that a ruling in her favor will redress the alleged harm. *Lujan*, 504 U.S. at 561. Still's predictions about NIOSH's "good faith" and willingness to "respond to . . . criticism," Opp'n to Mot. to Dismiss at 2, are instead "overly speculative," *Arpaio v. Obama*, 797 F.3d 11, 21 (D.C. Cir. 2015). Indeed, the fact that NIOSH has previously responded to Still's technical objections to its dose reconstruction calculation, Am. Pet. Ex. 2 at 2–5, suggests that NIOSH might well believe it has already addressed its fair share of criticisms, and regard DOL's pleas to reconsider accordingly. Therefore, because NIOSH is not a party to this litigation and because DOL has no authority to force a change in NIOSH's dose reconstruction, "it is entirely conjectural whether the . . . activity that affects [Still] will be altered or affected by the agency activity [she] seek[s] to achieve." *Lujan*, 504 U.S. at 571.

For these reasons, the relief Still seeks in her amended petition will not "likely alleviate the particularized injury alleged." *Fla. Audobon Soc'y*, 94 F.3d at 664. Still therefore lacks standing, and the Court will grant DOL's motion to dismiss. But the Court will grant Still leave to file an amended petition and restore NIOSH as a party to this lawsuit. With both agencies present before the Court, Still's petition would challenge a final agency action—DOL's decision to deny her EEOICPA claim—that the Court could "set aside, vacate, modify, or reverse" under the APA. *See, e.g.*, *Ergon-W.Va., Inc. v. U.S. Envtl. Prot. Agency*, 896 F.3d 600, 610 (4th Cir. 2018) (vacating and remanding to EPA because its "reliance on a facially-flawed report" prepared by DOE was "arbitrary and capricious"). At the same time, NIOSH's presence and participation in the lawsuit would substantially increase the likelihood that a vacatur of that

decision would lead NIOSH to redress any flaws in the dose reconstruction that the Court's ruling identified.[1] Accordingly, DOL's motion to dismiss will be granted without prejudice, but Still may file an amended petition adding NIOSH as a respondent. Fed. R. Civ. P. 15(a)(2).

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the respondent's Motion to Dismiss, Dkt. 20, is **GRANTED**. It is further

**ORDERED** that the plaintiff shall file a second amended petition on or before May 15, 2020.

Date: April 13, 2020

DABNEY L. FRIEDRICH
United States District Judge

---

[1] Nor would it pose an obstacle to redressability that Still's claim might once again be denied on remand—or even that NIOSH, conforming its dose reconstruction to any future adverse ruling from the Court, might reach the same result. To the contrary, "[i]f a reviewing court agrees" that an agency's decision was contrary to law, "it will set aside the agency's action and remand the case—even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason." *FEC v. Akins*, 524 U.S. 11, 25 (1998).